```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT


FLEMMING, ZULACK, WILLIAMSON,    :
ZAUDERER, LLP,                   :
                                 :
        Plaintiff,               :
                                 :
        v.                       :   File No. 1:07-CV-269
                                 :
CHARLES G. MORROW,               :
                                 :
        Defendant.               :
_____:
```

RULING ON DEFENDANT'S OBJECTION TO WRIT OF ATTACHMENT and MOTION
    TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
                        (Paper 11)

Now pending in this dispute over legal fees is Defendant Morrow's ("Morrow" or "Defendant") motion to dismiss for lack of subject matter jurisdiction, which also contains a constitutional challenge to Vermont's attachment process.  (Paper 11). Plaintiff law firm Fleming, Zulack, Williamson, Zauderer, LLP ("FZWZ" or "Plaintiff") objects to both motions.  For the reasons set forth below, the motion to dismiss and constitutional challenge to the attachment process are denied.

I.   Introduction

This case originated in Orleans Superior Court when FZWZ sued former client Morrow to collect unpaid legal fees.  The Orleans Superior Court held a hearing on Plaintiff's motion for an order of approval for a writ of attachment on Defendant's homestead in Barton, Vermont.  On the day of the hearing,

1

Defendant filed an objection to the writ of attachment, including a constitutional challenge to Vermont's attachment process, and a motion to dismiss for lack of subject matter jurisdiction. (Paper 11).  The court issued an order approving the writ of attachment and directed Plaintiff to respond to the motion to dismiss.  (Paper 12).  The state court scheduled a hearing for the motion to dismiss and constitutional challenge to the attachment process.  Defendant then removed the case to this Court based on federal question jurisdiction.  (Paper 1 at 2).

Defendant claims the forum-selection clause of the disputed promissory note designates New York as the forum state and must be accorded full faith and credit under 28 U.S.C. §§ 1738 and 1739.  (Paper 1 at ¶ 8, Paper 1-5).  There are two issues presently before the Court: (1) whether the forum selection clause in the promissory note is mandatory, limiting subject matter jurisdiction to New York, or is it permissive, allowing jurisdiction in New York and elsewhere; and (2) whether the attachment process in Vermont violates Defendant's constitutional right of due process.

II. Background

On November 14, 2003, Morrow issued a promissory note to FZWZ for $56,916.08.  (Paper 21-2 at 12).  The promissory note was entered into during the pendency of domestic relations proceedings, so FZWZ sought and obtained court approval under New

York Court Rules and the retainer agreement between Plaintiff and Defendant.  (Paper 11 at ¶ 5, Paper 11-2 at 4).  The trial in Morrow's case concluded in December 2003 and a Judgment of Divorce was entered in January 2004.  In February 2004, FZWZ sought court approval for the execution of an Amended and Restated Promissory Note ("the 2004 Note") in the amount of $172,937.00, for counsel fees, disbursements and other litigation costs currently due.  The original promissory note would be cancelled upon execution of the 2004 Note.  (Paper 21-2 at 6).  The Supreme Court of New York granted FZWZ's motion, noting plaintiff (Morrow) "in person [and] by signing the promissory note consents to the arrangement . . . . The court hereby approves the execution of a promissory note by [plaintiff] in favor of F,Z+W . . . ."  (Paper 21-2 at 2).

III. Discussion

    A.    Subject Matter Jurisdiction, Standard of Review and Applicable Law

Defendant contends Vermont lacks subject matter jurisdiction because "[a]ny legal dispute concerning the validity and enforcement of the non-witnessed promissory note must be litigated before the New York State Courts, pursuant to the specific venue and jurisdictional terms explicitly set forth by the promissory note."  (Paper 11 at ¶ 7).  According to Defendant, if the 2004 Note was approved by a New York Supreme Court Judge, it is "intricately linked with a public judicial act

and is, in fact, a public record subject to the Full Faith and Credit Clause . . . ."  (Paper 1 at ¶¶ 6-7).  Specifically, Defendant maintains "the forum-selection clause of the Promissory Note, designating New York as the Forum State must be accorded full faith and credit."  Id. at ¶ 8.

The forum selection clause in the 2004 Note states:

> This Promissory Note shall be governed by and construed and interpreted in accordance with the laws of the State of New York applicable to instruments made and to be performed entirely within such State.  The undersigned hereby consents to the jurisdiction of the courts of the State of New York in any action arising out of or relating to this Promissory Note.

(Paper 21-2 at 9).

The Vermont Supreme Court recently acknowledged, "[i]n Vermont, the superior court is broadly vested with 'original and exclusive jurisdiction of all civil actions' . . . ."  Lamell Lumber Corp. v. Newstress Int'l, Inc., 938 A.2d 1215, 1219 (Vt. 2007) (quoting 4 V.S.A. § 113).  The Lamell court then clarified, "[f]or 'courts of general jurisdiction . . . the presumption is that they have subject matter jurisdiction . . . unless a showing is made to the contrary.'"  Id. (quoting 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3522, at 60 (2d ed. 1984)).

Plaintiff, who brought suit in a different forum than the one specified in the contract, bears a burden "analogous to that imposed on a plaintiff to prove that the federal court has

subject matter jurisdiction over his suit or personal jurisdiction over the defendant." New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997).  Plaintiff must make only "a *prima facie* showing by alleging facts which, if true, would support the court's exercise of jurisdiction . . . and the facts must be viewed in the light most favorable to the plaintiff."  Id. (emphasis in original) (internal citations omitted).

Although neither party addresses the issue, where a contract includes choice of law and forum selection clauses, the Second Circuit has implied that such a forum selection clause should be construed according to the law specified in the contract.  See Phillips v. Audio Active Ltd., 494 F.3d 378, 385 (2d Cir. 2007) (citing Yavuz v. 61 MM, Ltd., 465 F.3d 418, 428-30 (10th Cir. 2006)).  However, the Phillips court did not reach this issue because the parties had not construed the clause under English law and had not relied on any particular features of English law. Accordingly, the court applied "general contract law principles and federal precedent to discern the meaning and scope of the forum clause."  Id. at 386.

The contract between FZWZ and Morrow contains a choice of law provision specifying New York State law.  Similar to circumstances in Phillips though, neither Plaintiff nor Defendant has construed the clause under New York State law or highlighted

any specific facets of New York State law that would apply. Therefore, the Court will apply federal common law to interpret the forum clause.

B. <u>Forum Selection Clause Interpreted Under Federal Law</u>

The Second Circuit recently set forth a four-step analysis governing whether to dismiss a claim in deference to a forum selection clause:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.
>
> If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'

<u>Phillips</u>, 494 F.3d at 383-84 (quoting <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15 (1972) (other internal citations omitted)).

The parties in this case disagree as to whether the clause is mandatary or permissive. Defendant claims the language of the forum selection clause is mandatory, conveying exclusive jurisdiction to New York. (Paper 11 at ¶ 7). Plaintiff argues the clause is permissive, because it is merely a "consent to

6

jurisdiction" in New York and "does not provide exclusive jurisdiction [or] limit the jurisdiction of the Courts of other States."  (Paper 21-3 at 2).

Within the Second Circuit, "[t]he general rule in cases containing forum selection clauses is that '[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'"  John Boutari & Son, Wines and Spirits, S.A. v. Attiki Importers and Distribs., Inc., 22 F.3d 51, 52 (2d Cir. 1994) (quoting Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989)).  The Boutari court explained: "As succinctly summarized by former Judge Weinfeld in Pullman, 'an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion....'"  Id. at 53 (emphasis in original) (quoting City of New York v. Pullman, Inc., 477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979)).

In Boutari, the clause is strikingly similar to the clause in this case and the court found it did not deprive the district court of jurisdiction.  See id.  The forum selection clause in Boutari stated: "This Agreement shall be governed and construed according to the Laws of Greece.  Any dispute arising between the parties hereunder shall come within the jurisdiction of the

competent Greek Courts, specifically of the Thessaloniki Courts." Id. at 52.

Likewise, the forum selection clause in this case contains no specific language of exclusion. Therefore, it confers jurisdiction in New York, but does not exclude jurisdiction elsewhere, such as in Vermont. Viewing the facts in the light most favorable to the Plaintiff, FZWZ has made a prima facie showing that subject matter jurisdiction exists in Vermont. Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

    C.    Constitutional Challenge to Vermont's Attachment Process

          1.    Safeguards against erroneous deprivation

Defendant claims Vermont's prejudgment attachment process violates his constitutional right of due process because of "the high possibility of erroneous deprivation" and the lack of "[a]dditional safeguards to deter wrongful attachment," the most important being a plaintiff's bond. (Paper 11 at ¶¶ 8, 12).

In arguing the "risk of erroneous deprivation under current Vermont procedures," Defendant appears to assert the need for notice and a hearing before the writ is issued. (Paper 11 at ¶ 11). This argument is misplaced though because, as Plaintiff notes, Defendant relies upon several cases that predate the 1979 Amendment to V.R.C.P. 4.1., which requires notice and a hearing before a prejudgment writ of attachment is issued. See id.,

(relying on Fuentes v. Shevin, 407 U.S. 67 (1972) and North Georgia Fishing, Inc. v. Di-Chem, Inc., 419 U.S. 601 (1975), among others).

The Supreme Court of Vermont has recognized that V.R.C.P. 4.1 in its current state requires:

> a hearing before issuance of a writ of attachment, possessory or nonpossessory, of either real or personal property.  [This] Amendment met the requirements of 12 V.S.A. § 3295 . . . engendered in turn by Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), and its progeny.  Cf. Terranova v. AVCO Fin. Servs. of Barre, Inc., 396 F. Supp. 1402 (D. Vt. 1975).  The three-judge court in Terranova held the procedural requirements now set out in V.R.C.P. 4.1 to be constitutionally mandated by the due process clause of the Fourteenth Amendment.

Filter Equip. Co., Inc. v. Int'l Bus. Mach. Corp., 458 A.2d 1091, 1092 (Vt. 1983).

The certified copy of the docket sheet from the State Court indicates Plaintiff had served the Notice of Hearing on Defendant by November 27, 2007.  (Paper 3 at 1).  Defendant filed an objection to the writ of attachment on November 29, 2007.  Id. Further, the motion hearing was contested, so Defendant had the opportunity to voice any concerns at the hearing.  Id.

Defendant next argues the only remedy for wrongful attachment involves "bringing a separate action and proving that the attachment was without probable cause."  (Paper 11 at ¶ 17). This contention is without merit because in addition to the notice and hearing before a writ is issued, Defendant may move to

discharge or modify the writ once it has been issued. According to V.R.C.P. 4.1(e)(2):

> At any time before entry of final judgment, defendant may move the Presiding Judge of the court in which the action is pending for an order modifying or discharging any attachment . . . . The judge may discharge the attachment in full upon the defendant's giving bond to the plaintiff in such sum and with such sureties as the judge directs, conditioned for the payment by the defendant of the damages and costs which the plaintiff may recover in the action.

The combination of notice and hearing before the prejudgment writ of attachment is issued, and the ability to modify or discharge the writ once it has been issued minimizes the risk of erroneous deprivation.

    2.   <u>Requirement of a preattachment bond</u>

Finally, Defendant maintains Vermont's attachment process is unconstitutional because it does not require a plaintiff to post a bond in the event the attachment is eventually found to have been erroneously issued or the plaintiff's claim fails. (Paper 11, ¶ 12). A plurality of the Supreme Court has recognized that ". . . neither a hearing nor an extraordinary circumstance limitation eliminates the need for a bond, no more than a bond allows waiver of these other protections[,]" and concluded ". . . due process generally requires all of the above." <u>Connecticut v. Doehr</u>, 501 U.S. 1, 23 (1991)). However, the Second Circuit has since reaffirmed its position:

> We specifically have stated that 'because only a plurality of the Justices addressed this issue in

10

>Doehr, this Circuit has continued to adhere to our
>previously established position that a security bond
>need not be posted in connection with a prejudgment
>attachment in order to satisfy the requirements of due
>process.'

British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A., 212 F.3d 138, 144 (2000) (quoting Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc., 56 F.3d 394, 402 (2d Cir. 1995)).

IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction and constitutional challenge to the attachment process (Paper 11) is DENIED.

Defendant shall file an answer to Plaintiff's Complaint within 20 days.  The parties shall file a proposed Stipulated Discovery Schedule/Order pursuant to L.R. 26.1(b) within 30 days thereafter.

SO ORDERED

Dated at Brattleboro, in the District of Vermont, this 29th day of May, 2008.

                                        /s/ J. Garvan Murtha
                                        J. Garvan Murtha
                                        United States District Judge